**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HERMINIA DOLEMBA on behalf of plaintiff and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | 19 C 7139 |
| v. | ) ) ) | Judge Blakey Magistrate Judge Gilbert |
| CHAMPION ROOFING, LLC, | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S _UNOPPOSED_ MOTION FOR PRELIMINARY APPROVAL**

Plaintiff Herminia Dolemba respectfully requests that this Court grant the Motion for Preliminary Approval of Settlement: (i) preliminarily certifying a class for settlement purposes; (ii) granting preliminary approval of the Settlement Agreement attached hereto as Appendix A; and (iii) appointing Herminia Dolemba as Class Representative and Daniel A. Edelman and Heather Kolbus of Edelman, Combs, Latturner & Goodwin, LLC as class counsel. In support of this motion, Plaintiff states as follows:

1.      Plaintiff filed the above-captioned lawsuit against defendant, Champion Roofing, LLC ("Defendant"), alleging that it violated the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), and the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA") by causing autodialed calls to be placed to the cell phones of Plaintiff and a nationwide class of individuals and entities.

2.      Counsel for Plaintiff and Defendant have reviewed and analyzed the legal and factual issues presented in this action, the risks and expense involved in pursuing the litigation to conclusion, the likelihood of Plaintiff and the class recovering damages in excess of those obtained

through this settlement, the protracted nature of the litigation and the likelihood, costs and possible outcomes of one or more procedural and substantive appeals.

3.    Based upon this review and analysis, and following extensive negotiations commenced shortly after the complaint in this case was filed, Plaintiff and Defendant entered into the Settlement Agreement, attached hereto as Appendix A.[1]

4.    The parties desire to settle and compromise the litigation on the terms and conditions embodied in the Settlement Agreement, including, without limitation, the following:

    a.    Class Certification.  The parties agree to the certification of a class, for settlement purposes only, consisting of:

> All persons, who on or after June 4, 2019, received calls by or on behalf of Defendant Champion Roofing, LLC on their cell phones, that were placed using an autodialer or a prerecorded or artificial voice.

Based on a review of records provided by Defendant's agent, Quancor Virtual Sales & Marketing ("QVSM"), and following a reasonable investigation of available records and information, Defendant confirms that approximately 38 unique cell phone numbers were called two or more times (on average 2.4 calls per unique cell phone number) by or on behalf of Defendant, which Plaintiff asserts were placed using an autodialer or prerecorded or artificial voice as defined in the TCPA.

5.    Settlement Recovery. Defendant shall create a $29,920.00 Settlement Fund (hereinafter "the Settlement Fund").   If approved by the Court, the Settlement Fund will be distributed as follows:

    a.    All costs of notice and administration expenses will be paid from the Settlement Fund and shall not exceed $1,225.00.   The Settlement Fund less these amounts

---

[1]  All capitalized terms not otherwise defined herein are defined in accordance with the definitions set forth in the Settlement Agreement.

constitutes the Net Settlement Fund.

        b.      Plaintiff's counsel shall submit a request for attorney's fees in an amount no less than $9,565.00 or 1/3 of the Net Settlement Fund made available to the class, subject to the Court's approval. If the costs of notice and administration are less than $1,225.00, then plaintiff may seek attorney's fees greater than $9,565.00 but not more than 1/3 of the Net Settlement Fund.

        c.      Plaintiff Herminia Dolemba shall receive an award of $3,500.00 as an incentive award for her services as a Class Representative, subject to the Court's approval. Plaintiff received 7 calls in this case and the amount sought is consistent with statutory damages for a non-willful violation of the TCPA. This amount shall be in addition to any amount plaintiff may recover as a Settlement Class Member.

        d.      If the deductions described in subparagraphs (a)-(c) are approved by the Court, the distributable Net Settlement Fund will be divided *pro rata* among Settlement Class Members who timely submit a valid Claim Form per each unique cell phone number that received a call placed by or on behalf of Defendant up to $1,200.00 per cell phone number.

        e.      All settlement checks shall be void 60 days from the date of issuance and shall so state on the check. Any undistributed amounts remaining in the Net Settlement Fund after all payments required under the Settlement Agreement have been made shall be distributed to a *cy pres* recipient(s), recommended by the parties and approved by the Court.

      6.     <u>Class Notice</u>.  The Settlement Agreement provides for notice by First Class U.S. Mail and email. The Settlement Class Administrator shall cause the Notice and Claim Form to be sent by First Class U.S. Mail, with a request for forwarding addresses, to the address associated with the cell phone numbers identified on the Class List. The Settlement Class Administrator will check each address against the United States Post Office National Change of

3

Address Database prior to the mailing. In the event a notice is returned as undeliverable and without a forwarding address, the Settlement Class Administrator shall make a reasonable attempt to locate an email address or alternative address and send notice via email. In the event that a notice is returned as undeliverable and a forwarding address is provided, the Settlement Class Administrator shall forward any such returned notice to the address provided by U.S. Mail.

Settlement Class Counsel will also post the notice and the Settlement Agreement on their firm's website. The Notice and Claim Form are attached to the Settlement Agreement as Exhibit 1.

The Settlement Agreement provides that ten (10) business days after entry of the Preliminary Approval Order, Defendant shall provide the Settlement Class Administrator with the Class List. Within forty (40) days after entry of the Preliminary Approval Order, the Settlement Class Administrator shall cause Notice and Claim Form in the form of Exhibit 1 to be sent by First Class U.S. Mail, with a request for forwarding addresses, to addresses associated with the cell phone numbers identified on the Class List to the extent Defendant and/or QVSM are in possession of such information. Settlement Class Members shall have 60 days to submit a Claim Form, opt out or object to the Settlement, after notice is initially sent by U.S. Mail.

7.      Class Members' Right to Opt Out. Any member of the Settlement Class may seek to be excluded from the Settlement Agreement and the releases therein by opting out of the Settlement Class within the time period set by this Court. Any member who opts out of the Settlement Class shall not be bound by any prior Court order or the terms of the Settlement Agreement and shall not be entitled to any of the monetary benefits set forth in the Settlement Agreement. Class members will have at least 60 days after the Settlement Class Administrator sends Notice to opt out of the Settlement Agreement.

8.      Claim Form. In order to receive the consideration provided under the Settlement Agreement, each Settlement Class Member must timely return a Claim Form, which will be provided with the Notice sent via U.S. Mail and email.  Settlement Class Members will return claim forms via U.S. Mail. After the deadline for the receipt of claim forms expires, the Settlement Class Administrator will determine the number of valid Claim Forms received based on the call records provided by Defendant.

9.      Class Members' Right to Object.  Any Settlement Class Member may object to the Settlement Agreement by filing with the Court and mailing to Settlement Class Counsel and counsel for Defendant a written objection within the time period set by this Court.  Any member who objects to the Settlement Agreement may appear and be heard at the final approval hearing. Class Members will have at least 60 days after the Settlement Class Administrator sends Notice to object to the Settlement Agreement.

10.     Federal Rule of Civil Procedure 23(a) makes class certification appropriate in cases where:

> **(1) The class is so numerous that joinder of all members is impracticable,**
>
> **(2) There are questions of fact or law common to the class,**
>
> **(3) The claims or defenses of the representative parties are typical of the claims defenses of the class, and**
>
> **(4) The representative parties will fairly and adequately protect the interest of the class.**

Further, Federal Rule of Civil Procedure 23(b)(3) provides that a class action is maintainable if the above prerequisites have been met and:

> **the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other**

> **available methods for the fair and efficient adjudication of the controversy.**

As demonstrated below, each of the requirements for certification of the Settlement Class is met.

        a.      <u>Rule 23(a)(1) -- Numerosity</u>. Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." The numerosity requirement is satisfied if it is reasonable to conclude that the number of members of the proposed class is greater than the minimum number required for class certification, which is about 10-40. *Kulins v. Malco*, 121 Ill. App. 3d 520, 530, 459 N.E.2d 1038 (1st Dist. 1984) (19 and 47 sufficient); *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 class members sufficient); *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (10-29 sufficient); *Sala v. National R. Pass. Corp.*, 120 F.R.D. 494, 497 (E.D. Pa. 1988) (40-50 sufficient); *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (72 class members).

In the present case, Defendant represents that, based on a review of the records from QVSM, and other available information, approximately 38 unique cell phone numbers were called two or more times (on average 2.4 calls per unique cell phone number) by or on behalf of Defendant (over 90 calls in total) which Plaintiff asserts were placed using an autodialer or prerecorded or artificial voice as defined in the TCPA. This plainly satisfies the numerosity requirement.

        b.      <u>Rule 23(a)(2) -- Commonality; and Rule 23(b)(3)- Common Questions of Law or Fact Predominate</u>. Fed. R. Civ. P. 23(a)(2) requires that there be a common question of law <u>or</u> fact. Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members. The commonality requirement

is satisfied if there are common questions linking the class members that are substantially related to the outcome of the litigation. *Blackie v. Barrack*, 524 F.2d 891, 910 (9th Cir. 1975). Common questions predominate if classwide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims. *McClendon v. Continental Group, Inc.*, 113 F.R.D. 39, 43-44 (D.N.J. 1986); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 52 (S.D.N.Y. 1987); *Spicer v. Chicago Board Options Exchange*, CCH Fed.Sec.L.Rptr. [1989-90 Transfer Binder] ¶94,943, at p. 95,254 (N.D. Ill. 1990); *Alexander Grant & Co. v. McAlister*, 116 F.R.D. 583, 590 (S.D. Ohio 1987). Where a case involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met." *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D.Ill. 1984); *Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D. Ill. 1988).

Here, there are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

(1)     Whether Defendant engaged in a pattern of making telemarketing calls to cell phones;

(2)     Whether Defendant used an autodialer or prerecorded or artificial voice message;

(3)     Whether Defendant thereby violated the TCPA;

(4)     The manner in which Defendant compiled or obtained their list of cell phone numbers;

(5)     Whether Defendant thereby violated the ICFA.

The Settlement Class is defined in terms of all persons who on or after June 4, 2019, received calls by or on behalf of Defendant Champion Roofing, LLC on their cell phones, that

7

were placed using an automated dialer or prerecorded or artificial voice.

Several courts have certified class actions under the TCPA. Telephone call and text message cases include: *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036 (9ᵗʰ Cir. 2012); *Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674 (S.D. Fla. 2013); *Mitchem v. Illinois Collection Serv.,* 271 F.R.D. 617 (N.D. Ill. 2011); *Balbarin v. North Star Capital Acquisition, LLC*, 10 C 1846, 2011 U.S. Dist. LEXIS 686 (N.D. Ill. Jan 5, 2011), *later opinion*, 2011 WL 211013, 2011 U.S. Dist. LEXIS 5763 (N.D. Ill. Jan. 21, 2011), *later opinion*, 2011 U.S. Dist. LEXIS 58761 (N.D. Ill. June 1, 2011); *Lo v. Oxnard European Motors, LLC*, 11 CV 1009 JLS (MDD), 2012 WL 1932283, 2012 U.S. Dist. LEXIS 73983 (S.D. Cal. May 29, 2012).  Other TCPA cases include:  *Holtzman v. Turza*, 08 C 2014, 2009 WL 3334909 (N.D. Ill., Oct. 14, 2009), aff'd in relevant part, 728 F.3d 682 (7ᵗʰ Cir. 2013);  *CE Design Ltd. v. Cy's Crabhouse North, Inc.*, 07 C 5456, 2009 U.S. Dist. LEXIS 67323 (N.D. Ill. July 27, 2009); *Sadowski  v. Med1 Online, LLC*, 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); *Hinman v. M & M Rental Ctr.*, 06 C 1156, 2008 U.S. Dist. LEXIS 27835 (N.D.Ill., April 7, 2008); *Targin Sign Sys. v. Preferred Chiropractic Ctr., Ltd.*, 679 F.Supp. 2d 894 (N.D. Ill 2010); *Garrett v. Ragle Dental Lab, Inc.*, 10 C 1315, 2010 WL 4074379 (N.D. Ill. Oct. 12, 2010); *Lampkin v. GGH, Inc.*, 146 P.3d 847 (Okla. Ct. App. Oct. 31, 2006); *Display South, Inc. v. Express Computer Supply, Inc.*, 961 So.2d 451, 455 (La. App. 1ˢᵗ Cir. 2007); *Transportation Institute v. Promo Dart, Inc.*, No. 06-2-03460-1 (King Co. Sup. Ct. Wash., Nov. 14, 2006); *Kavu, Inc. v. Omnipak Corporation*, 246 F.R.D. 642 (W.D. Wash. 2007); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 203 Airz. (App.) 94, 50 P.3d 844 (2002); *Critchfield Physical Therapy v. Taranto Group, Inc.*, 293 Kan. 285, 263 P.3d 767 (2011); *Karen S. Little, LLC v. Drury Inns, Inc.*, 306 S.W.3d 577 (Mo. App. 2010).

c.    Rule 23(a)(3) – Typicality.   Rule 23 requires that the claims of the named

Plaintiff be typical of the claims of the class:

> A plaintiff's claim is typical if it arises from the same event or practice or course
> of conduct that gives rise to the claims of other class members and his or her
> claims are based on the same legal theory.  The typicality requirement may be
> satisfied even if there are factual distinctions between the claims of the named
> plaintiffs and those of other class members.  Thus, similarity of legal theory may
> control even in the face of differences of fact.

*De La Fuente v. Stokely Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).

In the instant case, typicality is inherent in the class definition.  By definition, each of the

class members has been subjected to the same practice as the named Plaintiff, namely they are

persons who on or after June 4, 2019, received calls by or on behalf of Defendant on their cell

phones, that were placed using an automated dialer or a prerecorded or artificial voice.

d.    Rule 23(a)(4) -- Adequacy of Representation.  The adequacy of

representation requirement involves two factors: (a) the plaintiff's attorney must be qualified,

experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not

have interests antagonistic to those of the class. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th

Cir. 1992).

Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained

counsel experienced in handling class actions and claims involving unlawful business practices.

Counsel's qualifications are set forth in Appendix B.   Neither Plaintiff nor Plaintiff's counsel

have any interests which might cause them not to vigorously pursue this action.

e.    Rule 23(b)(3)  -- Class Action Is Superior to Other Available Methods of

Resolving This Controversy.   A class action is the superior method for the fair and efficient

adjudication of this controversy.  The interest of class members in individually controlling the

prosecution of separate claims is small because generally the class members are unaware of their

9

rights and have damages such that it is not feasible for them to bring individual actions. "[O]ne of the primary functions of the class suit is to provide a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group." *Brady v. LAC, Inc.*, 72 F.R.D. 22, 28 (S.D.N.Y. 1976).

The special efficacy of the consumer class action has been noted by the courts and is applicable to this case:

> **A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .**

*In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted).

Another court has noted:

> **Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller, and Kane have discussed in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59; see, e.g., <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'). The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.**

*Lake v. First Nationwide Bank*, 156 F.R.D. 615, 625 (E.D. Pa. 1994).

11.     As set forth above, there are approximately 38 unique cell phone numbers that were called two or more times (on average 2.4 calls per unique cell phone number) by or on behalf of Defendant (over 90 calls in total), which Plaintiff asserts were placed using an

autodialer or prerecorded or artificial voice as defined in the TCPA. The total theoretical liability based on the approximate number of calls could exceed $45,000.00 for a non-willful violation (90 calls x $500.00 per call = $45,000.00).

Plaintiff and Defendant negotiated a comprehensive settlement that confers substantial economic relief to all class members.

12.     Counsel for Plaintiff and the proposed class believe that the settlement of this action on the terms and conditions set forth in the Settlement Agreement is fair, reasonable, and adequate, and would be in the best interest of the class members.

WHEREFORE, plaintiff respectfully requests that this Court enter an order in the form of Exhibit 3 to the Agreement, which (i) grants preliminary approval of the proposed settlement, (ii) appoints Herminia Dolemba as a Class Representative and Daniel A. Edelman and Heather Kolbus of Edelman, Combs, Latturner & Goodwin, LLC as class counsel; (iii) directs the mailing of Class Notice and a Claim Form in the form of Exhibit 1 to the Settlement Agreement by First Class U.S. Mail, and (iv) sets dates for submission of Claim Forms, opt-outs, appearances and objections, and schedules a hearing for final approval under Fed. R. Civ. P. 23(c)(2).

Respectfully submitted,

s/ Heather Kolbus
Heather Kolbus

Daniel A. Edelman
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)

## CERTIFICATE OF SERVICE

I, Heather Kolbus, certify that on September 8, 2020, I caused a true and accurate copy of the foregoing document to be filed via the court's CM/ECF system which caused notice to be sent via email to the following:

Peter M. Spingola - pspingola@chapmanspingola.com
CHAPMAN SPINGOLA, LLP
190 S. LaSalle Street, Suite 3850
Chicago, IL 60603


                                        s/ Heather Kolbus
                                        Heather Kolbus


Daniel A. Edelman
Heather Kolbus
EDELMAN, COMBS, LATTURNER
        & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL  60603
(312) 739-4200

12